UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| DAVID SHROPSHIRE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 1:19–CV–123 |
| JASON MAUCERE, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Motions to Dismiss filed by Defendants Probation Officer Courtney Hambel, Detective Jason Maucere, Detective Jimmy Higdon, and Detective Steve Walls. [Docs. 14, 18]. Plaintiff David Shropshire is proceeding pro se and *in forma pauperis*, and he has not responded to the Motions. [Docs. 1, 4]. Even though Plaintiff did not respond to the Motions to Dismiss, the Court must review the motions to ensure they are well taken. *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).

With this obligation in mind, the Court has reviewed the Complaint several times and extremely thoroughly. After reviewing the Complaint, the briefs, and applicable law, the Motion filed by Defendant Hambel, [Doc. 14], is DENIED as moot, and the Motion filed by Defendants Maucere, Higdon, and Walls, [Doc. 18], is GRANTED in part and DENIED in part.

I. **Background**

This case stems from Plaintiff's allegedly incorrect registration as a sex offender and an arrest that stemmed from that incorrect registration. [Doc. 1]. The facts of this case begin in January 2017, when Plaintiff was incarcerated at FCI Yazoo City Low, a federal facility. [Doc. 1, PageID 11]. While incarcerated, Plaintiff's case manager at FCI Yazoo City Low sent a "transfer

1

package" to a halfway house in Chattanooga, Tennessee. [*Id.*]. Plaintiff said that a document in the package "order[ed him] to sign illegally that [he] might be subject to register as a sex offender." [*Id.* at PageID 14]. He was denied a placement at the halfway house "because of being classified as a convicted sex offender." [*Id.*].

After being denied a placement, he filed a complaint with the warden at FCI Yazoo City Low to resolve the incorrect classification. [*Id.*]. A meeting was set up, and "Case Manager Supervisor Anderson and other staff members were at the meeting." [*Id.*]. Plaintiff told the people at the meeting that the "public safety factors" implemented against him were incorrect. [*Id.*]. The people at the meeting disagreed and had him sign a form stating that he was a sex offender, and the form was put online so that the public "became aware that [he] was being classified as a convicted sex offender." [*Id.*].

Several months later, in April 2017, Plaintiff was released from a halfway house in Nashville, Tennessee, and he remained in Nashville while on supervised release. [*Id.*]. In Nashville, his probation officer did not ask him or require him to register as a sex offender. [*Id.*]. A few months later, he was transferred to a probation officer in Chattanooga. [*Id.*]. There, his probation officer also said that he did not have to register as a sex offender. [*Id.*].

In November 2017, Plaintiff violated his supervised release, and he went back to FCI Yazoo City Low until April 2018. [*Id.*]. Before his release, his case manager again made him sign a document saying he was a sex offender. [*Id.* at PageID 14–15]. The case manager sent a notice to the Tennessee Bureau of Investigation ("TBI"), notifying it that he signed the sex offender document. [*Id.* at PageID 15]. In turn, the TBI notified the Hamilton County Sheriff's Office about the sex offender form. [*Id.*].

2

After his release, Plaintiff alleges that "[o]n May 16, 2018 the Hamilton County Sheriff's [O]ffice sex offender unit contacted the Federal Probation [O]ffice who was monitoring Mr. Shropshire and advised that Mr. Shropshire had violated his probation and had not reported to their office as require[d]." [*Id.*]. Although it is unclear which members of the Federal Probation Office spoke to the Sheriff's Office, Plaintiff states, "Probation Officer Courtney Hambel lied to Detective Maucere if in fact she told him that Mr. Shropshire had failed to report; that she had directed Mr. Shropshire that he was required to register as a sex offender; and that Mr. Shropshire was living at a different address in violation of Tenn. Code Ann. § 40–39–203(a)(1)." [*Id.* at PageID 4].

Two days later, on May 18, 2018, Defendant Maucere, who is a detective with the Hamilton County Sheriff's Office, obtained a warrant for the arrest of Plaintiff. [*Id.* at PageID 22]. Plaintiff attached the warrant and affidavit of Defendant Maucere to his Complaint. [*Id.*]. Plaintiff says that the information in the affidavit is false. [*Id.* at PageID 17, 22]. Plaintiff says that Defendant Maucere "knowingly and deliberately, with disregard for the truth, did willfully provide false information under oath in order to obtain an arrest warrant . . . . " [*Id.* at PageID 17–18].

The warrant is signed by a clerk, and the attached affidavit reads, in part:

Further, affiant makes oath that the essential facts constituting the offense, the sources of affiant's information, and the reasons why his/her information is believable concerning said facts are as follows:

The defendant, Mr. David Shropshire, is a convicted sex offender and is required to report and comply with conditions set forth under Tennessee Code Annotated Title 40, Chapter 39, of the Tennessee Sexual Offender and Violent Sexual Offender Registration Verification and Tracking Act of 2004. Defendant has not previously registered as a sexual offender in Tennessee or in any other jurisdiction or state and was released from federal incarceration on April 6th, 2018. Defendant is required to register with the Hamilton County Sheriff's Office within 48 hours pursuant to TCA 40–39–203 due to him leaving incarceration and establishing residence within Hamilton County, Tennessee.

3

Defendant, Mr. Shropshire, was convicted on April 7th, 2000[,] of aggravated assault involving a sexual offense. On January 7th, 2000[,] Mr. Shropshire forced himself sexually on a female victim where he threatened the female victim with death if she did not comply. Mr. Shropshire pled guilty to this offense and was sentenced to 6 years imprisonment, suspended, and placed on probation. Defendant, Mr. Shropshire has also been convicted of other violent offenses including robbery and attempted carjacking for which he has since been imprisoned in a federal correctional facility.

On May 5th, 2018[,] the Hamilton County Sheriff's Office sex offender unit was notified by the Tennessee Bureau of Investigation (TBI) that the Federal Bureau of Prisons notified the TBI pursuant to 18 U.S.C. 4042 of the release of the defendant, Mr. David Shropshire, who was convicted of a violent crime and a sex offense, and who is subject to registration as a sexual offender under federal law. Defendant was formerly imprisoned at the Federal Correction Institution at Yazoo City, Mississippi (FCI Yazoo City) and was released on April 6th, 2018. The Federal Bureau of Prisons has notified the TBI that the defendant's projected address was 2307 Duncan Avenue, Chattanooga, TN 37402. On May 16th, 2018[,] the Hamilton County Sheriff[']s Office sex offender unit contacted the federal probation office who is monitoring the defendant who advised that Mr. Shropshire had violated his probation and had not reported to their office as required. The federal probation office further advised that the defendant signed a board of probation document on 03/06/2018 in which the defendant acknowledged that he was aware that he was required to register as a sexual offender. The federal probation office further advised that the defendant was living at a different address within Hamilton County which is 1799 Pine Needles Trail, Chattanooga, TN 37421. Pursuant to TCA 40–39–203(a)(l) "Within forty-eight (48) hours of establishing or changing a primary or secondary residence, establishing a physical presence at a particular location, becoming employed or practicing a vocation or becoming a student in this state, the offender shall register or report in person, as required by this part. Likewise, within forty-eight (48) hours of release on probation or any alternative to incarceration, excluding parole, the offender shall register or report in person, as required by this part."[1] Defendant, Mr. Shropshire, has knowingly violated this requirement and has not registered within the 48[-]hour reporting requirement since his release date on April 6th, 2018. Defendant is a serious threat to the community due to his convictions involving violence and sexual violence and his need to be monitored by the sex offender registry are of high importance.

Detective Maucere is seeking an arrest warrant charging the defendant, Mr. David Shropshire, with Violation of the Sex Offender Registry–Failure to Register within 48 Hours of Release from Incarceration (TCA 40–39–203 / Class E Felony).

[*Id.* at PageID 22].

---

[1] Tennessee Code Annotated § 40–39–203(a)(1) is correctly recited in the affidavit.

4

After obtaining the warrant, Defendant Maucere along with two other detectives from the Sheriff's Office, Defendants Higdon and Walls, arrested Plaintiff. [*Id.* at PageID 16–18]. Plaintiff alleges that he was held with a $300,000.00 bond but did not see a judge, talk to an attorney, or have a bond hearing for 12 days. [*Id.* at PageID 16–17]. A court document filed by Plaintiff states that his bond was set at $300,000.00 by a judge on May 18, 2018. [*Id.* at PageID 24].

On May 29, 2018, after talking to an attorney for ten minutes, a "prosecutor dismiss[ed] the case for lack of probable cause and no record for any conviction on Mr. Shropshire's record for a sex crime." [*Id.* at PageID 17]. As a result of being arrested, he was fired from his job. [*Id.* at PageID 20].

Plaintiff states that, "According to the 'Affidavit of Complaint' (Doc. # 1712939) any reasonable person would know that Mr. Shropshire was not required to register under the sex offender registration Act of 2004 based on a charge for Aggravated Assault." [*Id.* at PageID 17].

Plaintiff filed his lawsuit against numerous people in their official and individual capacities, including United States Probation Officer Courtney Hambel, Detective Jason Maucere, Detective Jimmy Higdon, Detective Steve Wallis, Case Manager Ellis, Case Manager McCarney, and Case Manager Anderson. [*Id.* at PageID 1]. He has alleged that Defendants violated his Fourth and Fourteenth Amendment rights by unlawfully arresting him, depriving him of a timely bond hearing, and maliciously prosecuting him. [*Id.* at PageID 2]. He seems to bring *Bivens* and § 1983 claims to remedy those alleged violations. [*See id.*]. He has also alleged several state-law tort claims. These claims appear to be claims of negligent infliction of emotional distress, gross negligence, "joint negligence," defamation, slander, malicious prosecution and unlawful arrest. [*Id.* at PageID 6, 19].

After filing the Complaint, he filed a motion to proceed *in forma pauperis*. [Doc. 2]. The motion was granted, and Plaintiff served several, but not all, Defendants through the United States Marshal's Service. [Docs. 4, 20]. Nonetheless, four Defendants have filed motions to dismiss.

Defendant Courtney Hambel brings a Motion to Dismiss pursuant to Rule 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 17, PageID 77]. Similarly, Defendants Maucere, Higdon, and Walls, (collectively, "Detectives"), bring a Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 19, PageID 94]. All of the Defendants make arguments that Plaintiff failed to serve them properly, failed to state a claim for which relief can be granted, and that they are entitled to immunity.

Although Defendants address the *Bivens* and § 1983 claims brought against them when arguing for immunity and failure to state a claim, they do not discuss the state law claims brought against them.

## II. Ambiguous Challenge to Subject Matter Jurisdiction

All four Defendants state that they bring a challenge to jurisdiction pursuant to Rule 12(b)(1) for lack of jurisdiction because they were improperly served. [Doc. 17, PageID 80; Doc. 19, PageID 98]. Even though Defendants brought these challenge under 12(b)(1), which is used to challenge the Court's subject matter jurisdiction and the ability for the Court to rule on the dispute, Defendants cite reasons for dismissal that, on their face, fall outside of the scope of Rule 12(b)(1). Both arguments appear to fall under the purview of Rule 12(b)(5), insufficient service of process. Therefore, the challenges to the Court's subject matter jurisdiction are not well taken. Based on the pleadings, this Court has subject matter jurisdiction under Federal Question Jurisdiction, 28 U.S.C. § 1331, and Supplemental Jurisdiction, 28 U.S.C. § 1367.

6

## III.     Insufficient Service of Process

All Defendants make arguments that they should be dismissed because Plaintiff did not serve them correctly. [Doc. 17, PageID 80; Doc. 19, PageID 98]. These arguments fall under Rule 12(b)(5), not 12(b)(1) or 12(b)(2) as suggested by Defendants. Rule 12(b)(5) provides that a motion to dismiss may be brought for insufficient service of process. *Chase v. White*, No. 3:16–CV–01576, 2016 WL 7210155, at *4 (M.D. Tenn. Dec. 13, 2016). The party serving process must show that service was complete. *Shires v. Magnavox Co.*, 74 F.R.D. 373, 377 (E.D. Tenn. 1977). Federal Rule of Civil Procedure 4(m) gives a plaintiff 90 days from the filing of a complaint to serve a defendant, and a court must extend this time period for good cause. Good cause is shown through a plaintiff's "reasonable, diligent effort to timely effect service of process." *Pearison v. Pinkerton's Inc.*, 90 F. App'x 811, 812–13 (6th Cir. 2004). Even when a plaintiff fails to show good cause, the Court may still decline to dismiss the action. *Stewart v. Tennessee Valley Auth.*, 238 F.3d 424 (Table), 2000 WL 1785749, at *1 (6th Cir. Nov. 21, 2000). A two-part analysis is required to determine if a lawsuit should be dismissed. *Id.* "First, the court must determine whether the plaintiff has shown good cause for the failure to effect service." *Id.* If so, the district court is required to give the party an appropriate amount of time to serve. *Id.* If the plaintiff has not shown good cause, "the court must either (1) dismiss the action or (2) direct that service be effected within a specified time." *Id.* The decision whether to dismiss the action or direct service is within the discretion of the district court if the plaintiff has not shown good cause. *Id.*

Defendant Hambel argues that the claims against her should be dismissed because Plaintiff did not serve her correctly. [Doc. 17, PageID 81]. Because Plaintiff sued Defendant Hambel in her official and individual capacity, he also had to serve the United States. When suing a federal employee in her individual and/or official capacity, a plaintiff must issue a summons according to

7

Rule 4(i) of the Federal Rules of Civil Procedure. [*Id.*]. Under Rule 4(i), the United States must be served along with the defendant by serving the civil-process clerk at the United States attorney's office, serving the Attorney General of the United States, and serving the federal agency. *See Abel v. Harp*, 122 F. App'x 248, 250 (6th Cir. 2005). Based on the docket sheet, Plaintiff has failed to properly serve Defendant Hambel. [Doc. 8].

Even though it is clear that Plaintiff has not correctly served Defendant Hambel, the Court still needs to determine whether it should permit Plaintiff more time to serve. *Stewart*, 2000 WL 1785749, at *1. Given that Plaintiff has not provided any explanation as to why he did not properly serve Defendant, the Court analyzes the issue as if Plaintiff has not shown good cause. *See id.* This lawsuit was filed in May 2019, and the summons was issued as to Defendant Hambel in November of 2019. [Docs. 1, 7]. Therefore, this lawsuit has been pending for well over a year, and Plaintiff should have been on notice of the improper service since February of 2020, when Defendant Hambel's Motion to Dismiss was filed. [Doc. 174]. Also, Plaintiff is proceeding pro se and *in forma pauperis*. [Doc. 6]. Although Plaintiff is still responsible for knowing and following the Federal Rules of Civil Procedure, Plaintiff's standing as pro se and *in forma pauperis*, in addition to the COVID–19 pandemic, necessitate some leeway. Therefore, the Court will not dismiss Defendant Hambel for failure to serve process. The Clerk's Office is directed to mail service packets to Plaintiff, and he is ordered to return the service packets within 14 days of the Clerk's Office sending them. If he fails to do so, Defendant Hambel will be dismissed from the lawsuit without any further notice to Plaintiff. *See Gardner v. United States*, No. 97–5469, 1999 WL 232693, at *2 (6th Cir. Apr. 15, 1999) ("[A] court may properly dismiss a *pro se* litigant's case for failure to comply with the court's order where the court puts the *pro se* party on notice that failure

to comply will result in dismissal." (citing *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1997)).

Because the Court will extend the deadline for Plaintiff to serve Defendant Hambel, it will not address the rest of her motion. Instead, the Court will wait until service has been perfected. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (ruling that actual knowledge of an action does not cure defects in service and does not meet service of process and due process requirements). Defendant Hambel may refile her Motion to Dismiss after she has been served properly.

Similarly, the Detective Defendants make an argument under Rule 4(m) for lack of service within 90 days. [Doc. 19, PageID 98]. Plaintiff served Defendants over 90 days after filing the Complaint and did not request leave to serve Defendants. [Docs. 11–13]. Like Defendant Hambel, seeing that Defendant is proceeding pro se, *in forma pauperis*, and during a global pandemic the Court will use its discretion and will not dismiss Plaintiff's case for missing the 90-day window even absent a showing of good cause. *See Stewart*, 2000 WL 1785749, at *1.

## IV. Federal Rules of Civil Procedure 12(b)(6)

The Detective Defendants move the Court to be dismissed on the grounds of failure to state a claim upon which relief can be granted under 12(b)(6) of the Federal Rules of Civil Procedure. However, the Detective Defendants only addressed the § 1983 claims brought against them, not Plaintiff's state law claims. Likewise, the Court will only address the § 1983 claims.

### 1. Standards for Rule 12(b)(6) and Claims for Violations of Constitutional Rights

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Federal Rule of Civil

9

Procedure 12(b)(6), the plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that create a reasonable inference that the defendant is liable for the alleged conduct in the complaint. *Id.*

When considering a motion to dismiss under Rule 12(b)(6), a court accepts the allegations in the complaint as true and construes them in a light most favorable to the plaintiff. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," however. *Iqbal*, 556 U.S. at 678. A plaintiff's allegations must consist of more than "labels," "conclusions," and "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted); *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)). Although the Rule 12(b)(6) standard still applies, a pro se litigant's pleadings are broadly construed and held "to less stringent standards than formal pleadings drafted by lawyers . . . . " *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Construing Plaintiff's Complaint broadly, he has brought three claims pursuant to 42 U.S.C. § 1983—for false arrest, for deprivation of a bond hearing, and for malicious prosecution. A § 1983 claim consists of two elements: the defendant (1) must deprive the plaintiff of either a constitutional or a federal statutory right and (2) must deprive the plaintiff of one of these rights while acting under color of law. *Id.*; *Doe v. Claiborne County*, 103 F.3d 495, 511 (6th Cir. 1996).

A violation of a constitutional or federal statutory right is a prerequisite because § 1983 "does not confer substantive rights" on a plaintiff; rather, it is merely a conduit through which a

plaintiff may sue another to "vindicate rights conferred by the Constitution or laws of the United States." *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010); *see Graham v. Conner*, 490 U.S. 386, 393–94 (1989) ("As we have said many times, § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." (quotation omitted)). "The first inquiry" is therefore "to isolate the precise constitutional violation with which [the defendant] is charged." *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *see Graham*, 490 U.S. at 394. Under these types of claims, "each defendant's liability must be assessed individually based on his own actions." *Hart v. Hillsdale Cty., Michigan*, No. 18–1305, 2020 WL 5242425, at *8 (6th Cir. Sept. 3, 2020) (quoting *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)).

The second requirement, that a person act under the color of law, does not appear to be at issue in the case. With the second requirement met, Plaintiff must only allege that Defendants deprived him of his constitutional or federal rights, the first element of a § 1983 claim. Plaintiff fails to do so.

### A. *False Arrest*

Plaintiff alleges that his rights under the Fourth and Fourteenth Amendments to the United States Constitution were violated when he was placed under false arrest. He alleges that the arrest was a violation of his due process rights. [Doc. 1, PageID 1]. Based on the allegations in the Complaint, the Court interrupts this allegation to mean that Plaintiff is alleging that the Detectives did not have probable cause to make the arrest. [*See generally id.*]. Plaintiff does not appear to be arguing that the warrant is facially deficit, only that it contains lies and falsehoods. [*Id.* at PageID 4].

11

When making a false arrest claim, "a plaintiff [has] to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Webb*, 789 F.3d at 666–67 (quoting *Voyticky v. Vill. of Timberlake,* 412 F.3d 669, 677 (6th Cir.2005)). If the arresting officer had probable cause for the arrest, the "[p]robable cause is a defense to false arrest." *Id.* If the arresting officer obtained a facially valid warrant to make the arrest, "liability is proper only if the defendant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood and such statements or omissions were material, or necessary, to the finding of probable cause." *Hart*, 2020 WL 5242425, at *4 (internal quotation omitted). An officer's "negligence or perhaps a lack of attention to detail" are not grounds for finding liability. *Id.* at *6.

i. Detective Jason Maucere

Plaintiff alleges that Defendant Maucere violated his Fourth and Fourteenth Amendment right to be free from an unlawful seizure even though Defendant Maucere had a warrant to make the arrest. Plaintiff alleges that some of the information contained in the warrant was false, including that he was a sex offender. Also, Plaintiff alleges that a reasonable officer should have known that he was not required to register as a sex offender because Plaintiff pleaded guilty to aggravated assault. Based on Plaintiff's allegations and looking to the affidavit that was filed with the warrant, these statements are false:

- The defendant, Mr. David Shropshire, is a convicted sex offender and is required to report and comply with conditions set forth ender Tennessee Code Annotated Title 40, Chapter 39, of the Tennessee Sexual Offender and Violent Sexual Offender Registration Verification and Tracking Act of 2004.

- Defendant is required to register with the Hamilton County Sheriff's Office within 48 hours pursuant to TCA 40–39–203 due to him leaving incarceration and establishing residence within Hamilton County, Tennessee.

12

- Defendant, Mr. Shropshire, was convicted on April 7th, 2000 of aggravated assault involving a sexual offense. On January 7th, 2000. Mr. Shropshire forced himself sexually on a female victim where he threatened the female victim with death if she did not comply.

- Defendant, Mr. Shropshire, has knowingly violated this requirement and has not registered within the 48[-]hour reporting requirement since his release date on April 6th, 2018. Defendant is a serious threat to the community due to his convictions involving violence and sexual violence and his need to be monitored by the sex offender registry are of high importance.

[Doc. 1, PageID 22].

Even if these statements are false, Plaintiff must allege that Defendant Maucere "knowingly and deliberately, or with a reckless disregard for the truth, made [the] false statements or omissions that created a falsehood." *Hart*, 2020 WL 5242425, at *4. Plaintiff fails to do so because he makes conclusory arguments that Defendant Maucere was acting "knowingly and deliberately." Defendant does not allege any facts, if proven, that would show that Defendant Maucere knowingly and deliberately made false statements. [Doc. 1, PageID 17–18]. Defendant only makes broad conclusions, which are disregarded.

Similarly, Plaintiff's allegations show that Defendant Maucere did not make the statements with a reckless disregard for the truth. A reckless disregard for the truth can be shown when an affiant makes a misrepresentation in an affidavit, but a plaintiff must allege more than factual inaccuracies to show reckless disregard for the truth. *Butler v. City of Detroit, Michigan*, 936 F.3d 410, 419 (6th Cir. 2019). For example, if an affiant represents that he or she has personal knowledge of facts but does not, or if an affiant "possessed information that contradicted the sworn" statements, then a statement may have been made with reckless disregard for the truth. *Id.* at 420; *McCallum v. Geelhood*, 742 F. App'x 985, 993 (6th Cir. 2018).

13

A recent Sixth Circuit case illustrates a situation in which an affiant may have made statements with reckless disregard of the truth when obtaining a warrant. In *Hart v. Hillsdale Cty., Michigan* an individual was listed on the Michigan sexual offender database even though he should not have been. 2020 WL 5242425, at *2. The defendant officers got a warrant relying on the database without verifying the information even though the information on the database itself appeared to be flawed. *Id.* at *3, *7. Further, other facts showed that the plaintiff should not have been arrested because the basis of the arrest was a failure to register his place of residence; the plaintiff was homeless which meant, under Michigan law, that he did not need to register a residence. *Id.* at *7.

Plaintiff's allegations are different than the plaintiff's in *Hart*. Not only did Plaintiff sign a document stating that he should register as a sex offender, but Detective Maucere, according to the Complaint, actually talked to a federal probation officer to verify information and then put all of the information in the affidavit, including that he had received information from the Federal Probation Office. Plaintiff's Complaint shows that Detective Maucere was not reckless.

Plaintiff alleges that Defendant Maucere should have known that aggravated assault would not require him to be put on the sex offender registry, but Defendant Maucere put Plaintiff's previous crime in the affidavit itself. [*Id.* at PageID 22]. Further, the affidavit states that Detective Maucere was relying on information provided by another agency that stated that plaintiff "was convicted of a violent crime and a sex offense, and . . . is subject to registration as a sexual offender under federal law." [*Id.*]. Given that an officer is permitted to rely on information provided by another law enforcement agency, *United States v. Hensley,* 469 U.S. 221, 231 (1985), Defendant Maucere was not reckless by relying on the statements and information provided by the Bureau of

14

Prisons, the TBI, and Federal Probation Office. Plaintiff makes no other allegations about how Defendant Maucere was reckless with the truth.

The allegations in the Complaint fail to show that Defendant Maucere made false statements knowingly and deliberately, or with a reckless disregard for the truth. However, if Plaintiff had made the necessary allegations, those false statements would be excluded from the affidavit, and the Court would review the affidavit again to determine if it supported a finding of probable cause. *Butler*, 936 F.3d at 422. If there would be probable cause without the false statements, then Plaintiff would still be unable to proceed with his false arrest claim. *Id.*

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010). Based on the facts in the affidavit that are *not* allegedly false, Defendant Maucere still had probable cause to arrest Plaintiff for violation of Tennessee's sex offender statute. The fact that Defendant Maucere discussed the matter with a federal probation officer, learned that Plaintiff signed a document stating that he needed to register after he was released from prison, and that Plaintiff failed to do so, together, are "reasonable grounds" that Plaintiff committed a crime.

After determining that Defendant Maucere did not make any false statements deliberately, knowingly, or with a reckless disregard for the truth and determining that even if he had made such statements that the warrant would still contain probable cause, Plaintiff's ability to pursue a § 1983 claim for false arrest against Defendant Maucere is foreclosed.

      ii.  Detectives Jimmy Higdon and Steve Walls

Plaintiff also alleges that Defendant Jimmy Higdon and Steve Walls violated his Fourth and Fourteenth Amendment rights. These Defendants were present when Plaintiff was arrested. But, as discussed above, they had a facially valid warrant and had probable cause when making

15

the arrest. Because they acted with probable cause, they cannot be held liable for false arrest. *Webb*, 789 F.3d at 666–67.

### B. *Deprivation of a Timely Bond Hearing*

Plaintiff's allegations that the Detective Defendants deprived him of a bond hearing for twelve days is completely conclusory. He has not provided a factual basis that shows that any of the Defendants took any action to delay, prevent, or deprive Plaintiff of a bond hearing for twelve days. As already stated, a defendant can only be held liable for his or her own actions under § 1983. Because defendants can only be held accountable for their own actions and Plaintiff did not allege facts indicating that they took actions to deprive him of a bond hearing, these Defendants cannot be held liable for the alleged deprivations of a bond hearing. *Hart*, 2020 WL 5242425, at *8; *Binay*, 601 F.3d at 650.

### C. *Malicious Prosecution*

Like the other two alleged deprivations of a constitutional right, Plaintiff has not shown that his constitutional right to be free from a malicious prosecution has been violated. "Freedom from malicious prosecution is a clearly established Fourth Amendment right." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Sykes v. Anderson,* 625 F.3d 294, 308 (6th Cir. 2010)). A violation of the Fourth Amendment for malicious prosecution has four elements:

> (1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff;
> (2) there was no probable cause for the criminal prosecution;
> (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and
> (4) the criminal proceeding was resolved in the plaintiff's favor.

*Id.*

As discussed above, based on the Plaintiff's Complaint, the Detectives had probable cause to make the arrest. Therefore, Plaintiff cannot satisfy the second element of a violation of his constitutional rights for malicious prosecution.

    2.    Conclusion

In conclusion, Plaintiff's claims under § 1983 fail because he has not pleaded facts alleging that the Detective Defendants violated his constitutional rights. Therefore, the first prong of a § 1983 claim cannot be met, and the False Arrest, Deprivation of a Bond Hearing, and Malicious Prosecution claims are dismissed as to the Detective Defendants.

The Detective Defendants have not made any arguments that provide grounds for dismissal of Plaintiff's state law claims under Rule 12(b)(6). Therefore, those claims still stand.

**V.    Qualified Immunity**

The Detective Defendants argue that they are entitled to qualified immunity. [Doc. 19, PageID 101]. The Court disagrees considering the nature of the allegations and the remaining claims. As discussed above, the Detective Defendants have made successful arguments for the dismissal of the § 1983 claims brought against them. They did not address the state law claims brought against them at all. Seeing that parties "may not present a skeletal argument, leaving [the Court] to put flesh on its bones," the Court will not construe their arguments for qualified immunity regarding the § 1983 claim to include the state law claims. *McGrew v. Duncan*, 937 F.3d 664, 669 (6th Cir. 2019). Therefore, the request for qualified immunity is denied as moot.

**VI.    Conclusion**

For the above stated reasons, Defendant Hambel's Motion to Dismiss, [Doc. 14], is DENIED as moot. The Detective Defendants' Motion to Dismiss, [Doc. 18], is GRANTED in part and DENIED in part. Plaintiff's claims filed pursuant to § 1983 against the Detective Defendants,

17

in their individual capacity, for violation of Plaintiff's Fourth and Fourteenth Amendment rights are DISMISSED.

The Clerk's Office is DIRECTED to mail service packets to Plaintiff, and he is ORDERED to return the service packets within 14 days of the Clerk's Office sending them. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service. Fed. R. Civ. P. 4. Service on Defendants shall be made pursuant to Rule 4(e) and Rule 4(i) of the Federal Rules of Civil Procedure and Rule 4.04(1) and (10) of the Tennessee Rules of Civil Procedure, either by mail or personally if mail service is not effective. Plaintiff is forewarned that if he fails to timely return the completed service packets, any unserved defendant will be dismissed.

So ordered.

ENTER:

                                              s/J. RONNIE GREER
                                  UNITED STATES DISTRICT JUDGE